UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ENOMA IGBINOVIA,<br><br>                Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>                Defendants. | 3:16-cv-00497-MMD-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

       This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF No. 65). Plaintiff opposed (ECF No. 113), and defendants replied (ECF No. 119). Plaintiff's cross-motion for summary judgment (ECF No. 114) and defendants' motion to dismiss (ECF No. 64) is also before the court. For the reasons stated below, the court recommends that the motion for summary judgment (ECF No. 65) be granted, and that plaintiff's cross-motion for summary judgment (ECF No. 114) and defendants' motion to dismiss (ECF No. 65) be denied as moot.

### I.    PROCEDURAL BACKGROUND

       Enoma Igbinovia ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at Southern Desert Correctional Center in Indian Springs, Nevada, but the alleged events underlying his claims occurred while he was incarcerated at Ely State Prison ("ESP") in Carson City, Nevada. Proceeding *pro se*, plaintiff brings civil rights clams under 42 U.S.C. § 1983 against several NDOC and ESP officials.

       While the factual underpinnings of plaintiff's claims are heavily disputed, plaintiff's claims generally arise from his allegations that defendants' indefinitely classified him as a high risk potential ("HRP") status on the basis of false and fabricated evidence, indefinitely confined him in solitary confinement, never allowed plaintiff to be present at due process hearings on his classification, and refused to answer plaintiff's grievances and kites regarding his HRP status.

(ECF No. 1-2; *see also* ECF No. 65 at 2.) Plaintiff sues NDOC Deputy Director James G. Cox ("Cox"), NDOC Inspector General Dave Molnar ("Molnar"), NDOC Inspector General Harry Churchward ("Churchward"), Warden Eldon K. McDaniels ("McDaniels"), Associate Warden Deborah Brooks ("Brooks"), Associate Warden Renee Baker ("Baker"), Senior Caseworker Claude Willis ("Willis"), Caseworker Michael Oxborrow ("Oxborrow"), Sergeant Robert Huston ("Huston"), Nurse Practitioner Greg Martin ("Martin"), Dr. Michael B. Koehn ("Koehn"), Nurse Gloria Carpenter ("Carpenter"), and Health Information Coordinator Cheryl Magnum ("Magnum"). (ECF No. 1-2 at 2-3.) Plaintiff seeks monetary damages, declaratory relief, and injunctive relief. (*Id.* at 9.)

Plaintiff filed his complaint on June 28, 2016. (ECF No. 1-2.). On June 22, 2017, the District Court entered a screening order pursuant to 28 U.S.C. § 1915, and found that plaintiff stated five cognizable claims for relief: (1) a retaliation claim; (2) a due process claim relating to plaintiff's transfer to administrative segregation; (3) a cruel and unusual punishment claim; (4) a due process claim relating to plaintiff's disciplinary hearings in 2010; and, (5) a denial of access to the grievance process claim. (ECF No. 25.). Plaintiff brings his claims against all defendants, with the exception of his due process claim relating to his disciplinary hearing, which is brought only against Huston and Churchward. (*Id.* at 11-12, 16.)

The court permitted plaintiff to proceed based on the following allegations. (*Id.*) Beginning in September 2009, Molnar and Churchward investigated the Aryan Warriors prison gang regarding the possession of contraband cellphones at ESP. (ECF No. 1-2 at 9.) On September 22, 2009, Plaintiff had an interview with Molnar and Churchward. At that interview, Plaintiff threatened to file grievances and sue Molnar after Plaintiff found out that Molnar had placed plaintiff's safety in jeopardy by naming him as a witness against the Aryan Warriors. Based on the allegations, both Molnar and Churchward threatened to put Plaintiff into indefinite "HRP supermax status[1]" if he did not give them information about the Aryan Warriors. When Plaintiff did not provide them with information, prison officials followed through with their threat and designated plaintiff as HRP.

---

[1] "HRP" is an acronym for High Risk Potential. (ECF No. 65 at 2; ECF No. 113 Exh. 2 at 8.)

(*Id.* at 29.) The court permitted plaintiff to proceed on a retaliation claim against all defendants because plaintiff's allegations suggested that the defendants acted in concert to fabricate evidence and charges against Plaintiff in retaliation for his threats to sue Molnar and failure to assist the investigation of prison contraband. (ECF No. 25 at 9.)

On September 22, 2009, plaintiff was placed in administrative segregation. (ECF No. 113 Exh. 2 at 8.) Plaintiff alleges that prison officials never provided plaintiff with the reason for his administrative segregation and never gave plaintiff an opportunity to contest the administrative segregation designation. Moreover, defendants collectively created false evidence to move plaintiff into administrative segregation and keep him there. (*Id.* at 18-20.) In particular, Oxborrow created a false case note entry stating that he provided plaintiff with a full classification hearing and notified him that he was placed in administrative segregation "due to a pending investigation." (ECF No. 113 Exh. 2 at 8.) Plaintiff's prison records also indicate that he received administrative segregation review hearings in January 2010, February 2010, March 2010, and June 2010. (ECF No. 1-2 at 18; ECF No. 113 Exh. 2 at 8.) Plaintiff was not present at the full classification hearing nor the administrative segregation review hearings. (ECF No. 1-2 at 18.) The court found that plaintiff had properly stated that defendants' collective actions caused plaintiff to be placed in administrative segregation without providing him due process of law, in violation of the Fourteenth Amendment. (ECF No. 25 at 10-11.)

Plaintiff was officially designated as HRP supermax status on September 23, 2009 (ECF No. 1-2 at 5-6), where he remained until March 6, 2015 (ECF No. 65 Exh. A). He explains that "indefinite HRP supermax status" entails both an HRP status classification and indefinite solitary confinement. (ECF No. 1-2 at 14-15, 17.) Because plaintiff was imprisoned in solitary confinement solely on the basis of defendants allegedly fabricated evidence, the court permitted plaintiff to proceed on an Eighth Amendment cruel and unusual punishment claim. (ECF No. 25 at 12.)

In February 2010, Churchward charged plaintiff with MJ26 possession of prison contraband—a cellphone—and MJ47 attempted escape. (*Id.* at 51.) The MJ26 charge was based

3

on Churchward's allegations that plaintiff admitted to having access to a cellphone and that investigators searched a cellphone confiscated from another inmate and found phone numbers from plaintiff's family. (*Id.*; ECF No. 113 Exh. 1 at 1.) The MJ47 charge was based on an incomplete letter confiscated from plaintiff's cell, which Churchward alleged referenced "code" and "practiced script" constituting upcoming escape attempt. (ECF No. 1-2 at 51.) Plaintiff asserts that the confession and the phone records were fabricated, and that his cellmate confessed to writing the letter in an interview with Churchward. (*Id.* at 57.) On March 5 and 12, 2010 Huston conducted disciplinary hearings on the MJ26 and MJ47 charges. Huston did not permit plaintiff to speak at the disciplinary hearings. Huston found plaintiff guilty of the MJ26 charge based on Churchward's allegedly fabricated testimony that plaintiff had admitted to possessing a cellphone. (*Id.* at 52.) However, Huston dismissed plaintiff's MJ47 charge because he could not confirm that the handwriting in the letter belonged to plaintiff. (*Id.*; ECF No. 113 Exh. 24 at 3.) The court permitted plaintiff to proceed on a Fourteenth Amendment due process claim against Huston and Churchward. (ECF No. 25 at 12.)

Finally, plaintiff alleges that he filed numerous grievances regarding the reason he was placed on HRP supermax status. Prison officials either completely ignored grievances, or did not directly respond. For example, plaintiff asserts that he was frequently told he was placed on HRP status for safety and security concerns without any further explanation. (ECF No. 1-2 at 13.) As such, the court found that plaintiff stated a colorable claim for denial of access to the grievance process. (ECF No. 25 at 13.)

Defendants now move to dismiss the complaint on the grounds that plaintiff's claims are barred by the doctrines of claim preclusion and issue preclusion. (ECF No. 64.) Additionally, defendants move for summary judgment on the basis that plaintiff's claims are barred by the statute of limitations. Plaintiff opposed both motions (ECF Nos. 81 & 113) and defendants replied (ECF Nos. 83 & 119). Finally, plaintiff moves for summary judgment (ECF No. 114) on the basis of undisputed evidence, which defendants oppose (ECF No. 131) and to which plaintiff replied (ECF No. 137). The court's recommendation follows.

## II. LEGAL STANDARDS

**B. Motion for Summary Judgment**

Summary judgment allows the court to avoid unnecessary trials, *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994), and is appropriately granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations and quotations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. The Ninth Circuit follows a "policy of liberal construction in favor of *pro se* litigants." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998). Accordingly, for purposes of opposing summary judgment, a reviewing court will consider as evidence the allegations a *pro se* litigant offers in motions and pleadings, where the allegations are based on personal knowledge and set forth facts that would be admissible into evidence, and where the litigant attested under penalty of perjury that they are true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Nevertheless, mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### III.  DISCUSSION

Defendants argue that the complaint is barred by the statute of limitations because it is based upon events that occurred in 2010 and 2011. (ECF No. 65.) Plaintiff counters that he was not in possession of the facts underlying each of his five claims until June 18, 2015. Plaintiff's claims are discussed in turn.

#### A. Statute of Limitations Standard

42 U.S.C. § 1983 does not contain a statute of limitations. Instead, federal courts apply the forum state's statute of limitations for personal injury claims. *Comm. Concerning Cmty. Improvement v. City of Modesto*, 853 F.3d 690, 701 n.3 (9th Cir. 2009). Thus, in Nevada, the statute of limitations for a § 1983 claim is two years. Nev. Rev. Stat. § 11.190(4)(e); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014). However, federal law determines when a

section 1983 action accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). The cause of action accrues and the statute of limitations begins to run "when the plaintiff knows or has reason to know" of the injury that is the basis for the § 1983 claim. *Canatella v. Van De Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007) (). A plaintiff need not know *all* the facts surrounding an incident for a cause of action to accrue. Rather, the statute of limitations "begins to run once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'" *Bibeau v. Pac. NW Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Even "a plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations, if he should have known in the exercise of due diligence." *Bibeau*, 188 F.3d at 1108.

### B. Retaliation Claim

Plaintiff's retaliation claim is based on his allegations that defendants falsely placed plaintiff in "indefinite HRP supermax status" in retaliation for threatening to sue Molnar and refusing to provide information for an ongoing investigation. (ECF No. 25 at 9-10.) Prison inmates have a First Amendment right to file grievances and lawsuits against prison officials and "be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). There are five basic elements for a viable claim of First Amendment retaliation in the prison context: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Because claims of retaliation are easy for inmates to allege, courts examine such claims with skepticism to avoid interfering too much with prison operations. *See Canell v. Multnomah County*, 141 F. Supp. 2d 1046, 1059 (D. Or. 2001) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Defendants contend that plaintiff admitted to learning of the allegedly false and retaliatory status change in an opposing brief filed on November 14, 2011, in a related case brought by

plaintiff, *Igbinovia v. Churchward*, 3:11-cv-00079. (ECF No. 65 at 3 (citing ECF No. 1-2 at 24-25)). Plaintiff responds that the opposing brief apprised him only of "defendants' reason/evidence used as basis to designate plaintiff into HRP status ...." (ECF No. 113 at 25.) He "was not aware of the facts ... used as [the] basis for his HRP status placement because at the time of defendants' admission on 11/14/11 they continue[d] to fraudulently conceal the facts...." (*Id.*)

Instead, plaintiff insists that he was not aware defendants' actions were retaliatory until June 18, 2015, when plaintiff reviewed a copy of his medical record "I-Files" for the first time and found that prison officials had fabricated a particular piece of evidence. (ECF No. 113 at 12, 26-27.) Plaintiff's theory is convoluted, but he appears to argue that defendants created a "false classification casenote[sic] entry" stating that, on September 1, 2009, he "was approved to have a medical x-ray done at Ely hospital," which required him to be transferred outside of ESP. (ECF No 1-2 at 4; ECF No. 113 at 5, 13, 25-27.) Looking to the complaint, this allegedly fabricated entry of approval caused prison officials to "designate[] [plaintiff] into the indefinite HRP supermax status for a mock escape attempt investigation." (ECF No. 1-2 at 4.) The court notes that it is unclear *how* the fabricated entry caused plaintiff's status change. (*See* ECF No. 1-2 at 4.) Defendants maintain that no connection exists.[2] (ECF No. 65 at 3 n.5.)

Without inspecting the soundness of plaintiff's argument, the court finds that the information provided in case number 3:11-cv-79 provided plaintiff with sufficient notice of the harm underlying his retaliation claim well before he discovered the allegedly fabricated x-ray approval. Specifically, plaintiff was served with an opposition to his cross-motion for summary judgment on March 14, 2011. (ECF No. 113 Exh. 4 at 30.) The opposition brief puts plaintiff on notice that he was official classified HRP because he "claimed that he did it and had no excuse, but was forced to buy minutes for a cell phone," and that was deemed a "substantial risk to the institution." (*Id.* at 5.) Additionally, attached to the opposition brief was a copy of plaintiff's "case

---

[2] Defendants' evidence overwhelmingly shows that plaintiff's HRP was based on a pending investigation into contraband cellphones at the prison (ECF No. 65 Exh. B, C, E), and attach the relevant prison regulations to show that inmates are not subject to a full classification hearing, much less a status change, when they are transferred from a prison to a hospital. (ECF No. 65 at 3 n.5) (citing Exh. D, 521.01(2)(H)).

note printout report," which contained an entry stating that on September 23, 2009, plaintiff was designated HRP due to his confession to possessing a contraband cellphone and "his presenting a substantial safety risk to the institution." (ECF No. 11 Exh. 2.)

While plaintiff claims in his opposition that he never admitted to possessing a contraband cellphone, his receipt of the case note printout and other evidence basing his status change on this admission necessarily provided plaintiff with notice that defendants retaliated against him. Plaintiff claims that Molnar threatened to place plaintiff in HRP supermax status if he did not provide information for an ongoing investigation. As such, plaintiff could infer from defendant's records that defendants fabricated plaintiff's admission, and perhaps the scope of their investigation, in order to place plaintiff into HRP supermax status to punish plaintiff for refusing to cooperate. Plaintiff should have been aware that his retaliation claim was actionable at this point. *Canatella*, 486 F.3d at 1133. Plaintiff provides no evidence on which a reasonable jury could find otherwise.

It is immaterial for limitations purposes whether defendants effected their retaliation in part by falsifying the "medical x-ray transfer approval case note." (*Id.* at 14.) The adverse action at the heart of plaintiff's retaliation claim is defendants' decision to place plaintiff in HRP supermax status, not their alleged evidence fabrication. (See ECF No. 25.) The evidence plaintiff received in case number 3:11-cv-00079 shows that defendants purported to base their decision to change plaintiff's status on his allegedly false confession to possessing a cellphone. (ECF No. 113 Exh. 2 at 8-9; Exh. 4 at 5.) This discovery should have alerted plaintiff that defendants' decision was not motivated by a legitimate correctional goal, but rather by retaliatory animus. After bringing a timely claim, plaintiff would have the opportunity to engaged in discovery to investigate what role, if any, the allegedly false transfer approval played in his status change. Nothing required plaintiff to conduct his own investigation into the authenticity of the medical approval case note, (*see* ECF No. 113 at 25), so a tolling of the statute of limitations on this basis is unwarranted.

Finally, plaintiff attempts to argue that his claim is not barred by the statute of limitations under the continuing violations doctrine. (ECF No. 113 at 27.) Under the continuing violations doctrine, the statute of limitations does not begin to run on a violation that is ongoing in nature until

the wrongful conduct comes to an end. *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002). However, "[t]he doctrine applies only where there is 'no single incident' that can 'fairly or realistically be identified as the cause of significant harm.'" *Id.* (internal quotation omitted).

Plaintiff contends that defendants' retaliation was ongoing because he had classification review hearings every six months at which defendants could have reclassified him, but chose not to do so. (ECF No. 113 at 28.) However, plaintiff's harm, including his subsequent reclassification denials, stems from a "single incident"—defendants' retaliatory placement of plaintiff into "indefinite HRP supermax status." (ECF No. 1-2 at 29 (noting that Molnar threatened *indefinite* placement)). Defendants' refusal to reclassify plaintiff at subsequent classification review hearings was merely a "delayed, but inevitable consequence" of plaintiff's placement because, as he concedes, the same allegedly fabricated evidence that supported his placement in HRP supermax status was also the sole grounds for the unfavorable classification review hearing decisions. *Knox*, 260 F.3d at 1014 (quoting *Hoersterey v. City of Cathedral City*, 945 F.2d 317, 319 (9th Cir. 1991); *see, e.g.*, *Bruce v. Woodford*, No. 1:07-cv-00269-BAM PC, 2012 WL 1424166 (E.D. Cal Apr. 24, 2012) (finding that "the classification committee hearings that periodically took place while Plaintiff was held in segregation" were not themselves "retaliatory acts that constitute a continuing violation").

Moreover, "[t]he purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994); *see Knox v. Davis*, 260 F.3d 1009, 1014 (9th Cir. 2001). As discussed above, plaintiff should have known of the retaliatory character of his status designation by November 2011. The information he received via case number 3:11-cv-00079 gave him notice of all the "allegedly wrongful acts that he wished to challenge," *Knox*, 260 F.3d at 104, including the defendants' pattern of rendering unfavorable decisions at plaintiff's classification review hearings. (ECF No. 113 Exh. 02 at 9-10 (showing the plaintiff received three classification review hearings from his initial HRP designation until May 27, 2011.)

1       Accordingly, the court finds that the continuing violations doctrine is inapplicable here. Because plaintiff received evidence in November 2011 that should have made him aware that his placement in HRP supermax status was retaliatory, he had until November 2013 to bring his retaliation claim. Thus, his June 28, 2016 filing date is untimely. Summary judgment is proper.

### C.   Due Process–Administrative Segregation Claim

Plaintiff brings a due process claim on a variety of grounds, all of which relate to his placement in administrative segregation. His claim is based in part on the allegation that he was placed in administrative segregation on the basis of fabricated evidence. (ECF No. 25.) Plaintiff admits that he learned of the allegedly false evidence on November 14, 2014 through the documents he received in case number 3:11-cv-00079. (ECF No. 113 at 2, 9-10.) Applying Nevada's two-year statute of limitations, the limitations period expired on November 14, 2013, well before he filed complaint on June 28, 2016. NRS 11.190(4)(e).

Plaintiff's due process claim is also based in part on his allegation that defendants failed to provide him with an adequate explanation of the grounds for his placement. However, plaintiff does not have a right to "detailed written notice of charges," or a "written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint v. McCarthy*, 801 F.3d 1080, 1100-01 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). The record establishes that on September 22, 2009, plaintiff was advised that defendants placed him in administrative segregation due to a "pending investigation" and that he would remain in solitary confinement until the investigation completed. (ECF No. 113 at 62; ECF No. 113 Exhs. 2 & 3). Plaintiff's desire for a more comprehensive explanation is insufficient as a matter of law to give rise to a due process claim, and, therefore, is irrelevant in assessing the limitation period.

Next, plaintiff alleges that defendants deprived him of the opportunity to contest his placement in administrative segregation. Although plaintiff has a due process right to "present his views to the prison official charged with deciding whether to transfer him to administrative segregation," prison officials are obligated only to give him this opportunity at some reasonable

time *after* his transfer. *See Hewitt v. Helms*, 459 U.S. 460, 476 (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). As such, plaintiff knew or should have known at a reasonable time after being transferred to administrative segregation that defendants had impermissibly deprived plaintiff of the right to contest the transfer. Plaintiff was transferred on September 22, 2009. (ECF No. 65 Exh. B at 1; ECF No. 113 Exh. 2 at 8, Exh. 3 at 1.) At best, his claim accrued in October 2009. *Hewitt*, 459 U.S. at 476-77 (finding that five days after transfer is a reasonable time to conduct a post-placement review, at which an inmate's challenge is considered). A more precise calculation is unnecessary, as plaintiff filed his claim on June 28, 2016, well after the two-year statute of limitations had expired. The court's analysis is not altered by plaintiff's contention that he discovered a fabricated record of an "x-ray medical transfer approval" because the right to present his views is purely procedural; plaintiff has no substantive right to examine, nor contest, particular pieces of evidence considered at his post-placement review. *See Hewitt*, 459 U.S. 476-77; *Toussaint*, 801 F.2d at 1100-1101.

        Finally, plaintiff asserts that he was never present at the administrative segregation classification review hearings that took place after his initial placement in administrative segregation. Plaintiff is correct in asserting that he is entitled to "some sort of periodic review" of his indefinite administrative segregation. *Hewitt v. Helms*, 459 U.S. at 477 n.9. However, he has no right to be present at the periodic review, nor does he have a right to submit additional statements or evidence. *See* Hewitt, 459 U.S. at 476, 477 n.9 ("This review will not necessarily require that prison officials permit the submission of any additional evidence or statements."); *Edmonson v. Coughlin*, 21 F. Supp. 2d 242, 253 (W.D.N.Y. 1998). This allegation is insufficient as a matter of law to give rise to a due process claim, and, therefore, is irrelevant in assessing the limitation period. this claim.

        Regardless of its factual predicate, plaintiff's due process claim accrued more than two years prior to the date he filed his complaint. NRS 11.190(4)(e). The court recommends that summary judgment be granted on plaintiff's due process claim relating to his administrative segregation.

### D. Cruel and Unusual Punishment Claim

Plaintiff's cruel and unusual punishment claim is based solely on defendants' use of fabricated evidence to place plaintiff in solitary confinement. (ECF No. 25 at 12-13.) As discussed above, plaintiff admits to receiving documents in case number 3:11-cv-00079 indicating that his HRP supermax status, which relegated him to solitary confinement, was based upon Churchward's allegedly fabricated account of witnessing plaintiff confess to possessing a contraband cellphone. *See infra* Section II.B. It makes no difference for limitations purposes that he asserts to have uncovered an additional instance of evidence fabrication—a "false x-ray transfer medical approval"—on June 18, 2015. (ECF No. 113 at 26.) The documents plaintiff received in his prior case had already provided plaintiff with the requisite notice that his solitary confinement was improperly secured. Plaintiff's claim accrued on March 14, 2011, and expired two years later on March 14, 2013. Just as his retaliation is barred by Nevada's two-year statute of limitation, so, too, is his cruel and unusual punishment claim time-barred. *See infra* Section II.B.

### E. Due Process–Disciplinary Proceedings Claim

Plaintiff alleges that at disciplinary hearings held on March 5 and 12, 2010, Huston violated plaintiff's due process rights by refusing to allow plaintiff to speak and by finding plaintiff guilty of possessing contraband solely based on Churchward's fabricated account of plaintiff admitting to using a cellphone. (ECF No. 1-2 at 51-53, 57; *see* ECF No. 131 at 4.) Plaintiff also seeks to hold Churchward liable for knowingly producing the fabricated evidence used at the disciplinary hearings. (ECF No. 1-2 a 51-53, 57; *see* ECF No. 113 Exh. 1.)

Defendants argue that plaintiff's due process claim accrued at the time the alleged violations occurred because plaintiff attended both the March 5 and 12, 2010 disciplinary hearings. (ECF No. 65 at 6.) Plaintiff argues that Churchward's fabricated evidence is a "constituent element of the false evidence used as basis for the mock HRP status placement," and attempts to incorporate by reference his legal reasoning used to defend his retaliation, cruel and unusual punishment, and due process–administrative segregation claim. (ECF No. 113 at 28-29.) Essentially, his position is that he "did not have the facts to use in March 2010, or in 2013, to present his claims" due to

"defendants' fraudulent concealment of the evidence and facts of the evidence/nucleus of the entire claims[sic]." (*Id.* at 29.) He does not contest his contemporaneous awareness that he was deprived the ability to speak at the March 2010 disciplinary hearings. (*Id.*)

Plaintiff's argument is without merit. He admits that he attended the March 5 and 12, 2010 disciplinary hearings and that a record of the hearing was served on plaintiff after the hearing. (ECF No. 1-2 at 50-52; ECF No. 113 Exh. 24.) He necessarily witnessed Huston deprive him of the ability to participate in the hearings. Additionally, he knew or should have known at the hearing or by way of the hearing record that Huston relied on Churchward's evidence in finding him guilty of possessing prison contraband. Plaintiff denies ever admitting to possessing a contraband cellphone, so the allegedly fabricated nature of Churchward's evidence is self-revealing; plaintiff cannot reasonably argue that he first needed to discover the "facts to his HRP status" to become aware that his admission was fabricated. (ECF No. 113 at 29; *see also* ECF No 1-2 (suggesting that plaintiff was aware at the hearing of the use of alleged fabricated evidence)). Accordingly, plaintiff knew or should have known on March 12, 2010 that he was barred from participating in the disciplinary hearings and found guilty on the basis of allegedly fabricated evidence. Plaintiff's claim accrued at that time and he had until March 12, 2012 to bring his claim. NRS 11.190(4)(e). Because he failed to do so, the court recommends that summary judgment be granted as to plaintiff's due process claim relating to his disciplinary hearings.

### F.     Denial of Access to the Grievance Process Claim

Plaintiff's denial of access to the grievance process claim is based on his allegation that prison officials ignored or did not directly answer his grievances that requested an explanation for his placement on HRP supermax status. (ECF No. 1-2 at 13.) Defendants argue that plaintiff filed inmate request forms and grievance related to his HRP supermax status from September 2009 to February 2010, which, at best, gave him until February 2013 to file his claim. (ECF No. 65 at 6-7.) Plaintiff does not appear to meaningfully dispute the date that he filed the relevant inmate request forms and grievances. (ECF No. 113 at 30-33.) However, plaintiff once again attempts to incorporate by reference his legal reasoning used to defend his retaliation, cruel and unusual

punishment, and due process–administrative segregation charge. (ECF No. 113 at 31.) According to plaintiff, he could not have brought his denial of access to the grievance process claim until June 18, 2015, the date on which he discovered "defendants' fraudulent concealment and obstruction of plaintiff's investigation" of the actual "facts" underlying his HRP status placement. (*Id.* at 32-33.)

The court finds that plaintiff should have known a reasonable time after filing his inmate request forms and grievances between 2009 and 2010 that they were either ignored or not directly answered. For those grievances and inmate request forms that failed to provide a direct response to plaintiff's request, plaintiff knew or should have known of their inadequacy upon receipt. For those that were ignored, plaintiff should have known after the grievance response deadlines elapsed that prison officials had obstructed "his ability to access the prison grievance system" and that he could have brought his claim. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *abrogated in part on other grounds by Shaw v. Murphy*, 532 U.S. 223 (2001); (ECF No. 113 Exh. 38) (setting forth the timeframes for official responses to inmate grievances). Even the most charitable calculation of time cannot justify plaintiff's decision to file his claim on June 28, 2016, over six years after submitting his grievances. (*see* ECF No. 113 Exh. 38.)

Plaintiff's assertion that he did not discover the "facts" underlying his HRP status until June 18, 2015 does not support a tolling of his access to the grievance process claim. Even assuming plaintiff's claim required his awareness that he was placed in HRP supermax status on the basis of fabricated evidence, plaintiff was provided with evidence on November 14, 2011 that his placement was due to an investigation into contraband cellphones at the prison. He also acknowledges that, around this time, he was in possession of a case note printout indicating that his placement was due to an allegedly fabricated admission to possessing a contraband cellphone. He did not need to uncover additional fabrications supporting his placement in order to claim that his grievances and inmate requests had been purposely undermined to prevent his access to the courts.

Accordingly, the court finds that plaintiff's access to the grievance process claim accrued by November 14, 2011. Because plaintiff did not bring his claim until June 28, 2016, his claim is

clearly barred by Nevada's two-year statute of limitations. NRS 11.190(4)(e). Defendants' motion for summary judgment should be granted.

## IV.  CONCLUSION

For the foregoing reasons, the court recommends that defendants' motion to for summary judgment (ECF No. 65) be granted, as plaintiff's claims are barred by the two-year statute of limitations on section 1983 claims. NRS 11.190(4)(e). Consequently, the court recommends that defendants' motion to dismiss (ECF No. 64) and plaintiff's cross-motion for summary judgment (ECF No. 114) be denied as moot.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (ECF No. 65) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that defendants' motion to dismiss (ECF No. 64) be **DENIED** as moot.

**IT IS FURTHER RECOMMENDED** that plaintiff's cross-motion for summary judgment (ECF No. 114) be **DENIED** as moot.

DATED: July 24, 2018

_____
UNITED STATES MAGISTRATE JUDGE

16